LMcCLENDON, J.,
dissents.
I respectfully dissent from the majority opinion.
Admittedly, if not for the Mineral Code the sale of the property in this matter would be subject to rescission for lesion beyond moiety. Further, land with mineral deposits is clearly more valuable than similar land without mineral deposits. However, that is not the issue before this court. The only issue is whether the Mineral Code is or is not applicable to this sale of property. It is my opinion that the provisions of the Mineral Code do apply and that the sale in question was not le-sionary, in accordance with LSA-R.S. 31:17.
*447 The majority of this panel determined that sand and gravel are corporeal immov-ables, and not incorporeal rights and, therefore, Article 17 of the Mineral Code does not apply. It is my belief, however, that the majority failed to distinguish between the actual sand and gravel, which may be a corporeal immovable, and the mineral right which is clearly an incorporeal immovable. See LSA-R.S. 31:18.
Article 4 of the Mineral Code provides: The provisions of this Code are.applicable to all forms of minerals, including oil and gas. They are also applicable to rights to explore for or mine or remove from land the soil itself, gravel, shells, subterranean water, or other substances occurring ^naturally in or as a part of the soil or geological formations on or underlying the land.
LSA-R.S. 31:4.
According to Article 5, ownership of land includes all minerals occurring naturally in a solid state. However, solid minerals are insusceptible of ownership apart from the land until reduced to possession. LSA-R.S. 31:5.[1] Minerals are reduced to possession when they are under physical control that permits delivery to another. LSA-R.S. 31:7. The Comment to Article 7 explains:
In the case of solid minerals, the landowner is regarded by Article 5 as the owner of such substances, but vesting of possession will still determine when minerals extracted become subject to the law of movables. As to others than the landowner, vesting of possession will have the dual effect of marking the vesting of title and mobilization. Despite the fact that Article 5 recognizes that the owner of land also owns solid minerals, such .minerals are insusceptible of ownership apart from the land, and the landowner may therefore only convey or lease the right to explore for them and reduce them to possession and simultaneously to ownership. Accordingly, the nature of the substance involved has no impact on the significance of reduction to, possession and consequent vesting of title.
Thus, minerals in their natural state cannot be “owned” separately from the land. United States v. 43.42 Acres of Land, 520 F.Supp. 1042, 1045 (W.D.La.1981), citing Frost-Johnson Lumber Co. v. Sailing’s Heirs, 150 La. 756, 91 So. 207 (1921). Ms. Hornsby, however, was able to convey, reserve, or lease the right to explore and develop her land for the production of minerals and to reduce them to possession and simultaneously to ownership. See LSA-R.S. 31:15; LSA-R.S. 31:7 and Comment.
I .-¡Article 17 of the Mineral Code provides that a sale of a mineral right is not subject to rescission for lesion beyond moiety. The Comment to LSA-R.S. 31:17 specifically acknowledges that said article represents existing law as to mineral transactions on undeveloped property finding it appropriate due to the speculative character of such transactions. The Comment went further, however, and recognized that there could be transactions where values could be more accurately determined. It was decided that even in those instances where values are not as speculative, the article should apply. The Comment continues:
A case could be made for application of the principle of lesion when the rights *448 sold are in fully developed property, thus permitting rather accurate determination of reserves and computations of values. However, considering the nature of transactions in developed properties and the facts that parties to them are usually experienced and lending institutions involved are highly conservative, the opportunities for the kind of overreaching which the concept of lesion was designed to prohibit are small indeed. Thus it is reasonable to make the doctrine of lesion beyond moiety inapplicable to all mineral transactions.
The unproduced minerals beneath the surface have little or no intrinsic value until reduced to actual possession permitting delivery to another. LSA-R.S. 31:7. The only added value to the land resulting from the sand and gravel in the land arises from the right to explore, mine or remove these minerals, and is therefore subject to the provisions of the Mineral Code. When removed and reduced to possession the sand and gravel can then be valued subject to the law of movables. See LSA-R.S. 31:7 Comment.
The trial court and the majority of this panel viewed the sand and gravel as minerals, and valued them as such, but then determined that the Mineral Code did not apply. I disagree. If sand and gravel are valued apart from the land, I am of the opinion that they are minerals and must be treated as such. Further, if the added value of the land is based simply on the right |4to remove the gravel below the surface, the Mineral Code clearly applies. LSA-R.S. 31:18.
Accordingly, I believe that this sale is not subject to rescission for lesion beyond moiety and I respectfully dissent.

. The Comment to LSA-R.S. 31:5 states in part:
[This] servitude theory is still applied to liquid and gaseous minerals on the assumption, however mistaken, that they are insusceptible of ownership in place and to solid minerals for reasons of policy without regard to their ■ susceptibility to ownership because of their physical nature.